UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,                    CRIMINAL NO. 17-135 (ADM/DTS)

      Plaintiff,

v.                                           <u>REPORT AND RECOMMENDATION</u>

2)   KELVIN BAEZ,
     *a/k/a Taliban*, and

4)   HERIBERTO BANUELOS BARRON,
     *a/k/a Kora*,

      Defendants.

---

David P. Steinkamp, Assistant U.S. Attorney, United States Attorney's Office, 300 South Fourth Street, Suite 600, Minneapolis, Minnesota 55415, for Plaintiff;

R J Zayed, Esq., Dorsey & Whitney LLP, 50 South Sixth Street, Suite 1500, Minneapolis, MN 55402, for Defendant Kelvin Baez;

Thomas H. Shiah, Esq., Law Offices of Thomas H. Shiah, 247 Third Avenue South, Minneapolis, MN 55415, for Defendant Heriberto Banuelos Barron.

---

## INTRODUCTION

Defendants Kelvin Baez ("Baez") and Heriberto Banuelos Barron ("Barron") filed numerous pretrial motions, many of which were disposed with at the July 11, 2018 motion hearing. After additional briefing and consideration, the Court now addresses the Defendants' dispositive motions to dismiss, sever, and suppress.[1]

---

[1]   This R&R does not address Baez's Motion to Suppress Statements (Docket No. 291) or his Motion to Suppress Eyewitness Identifications (Docket No. 360), as the parties are submitting further briefing on those matters. A separate Report and Recommendation will follow.

**FINDINGS OF FACT**

I. __Baez__

    A.    **Hotel Search** [2]

On May 5, 2017, Bloomington Police Officer Jacob Gruber stopped Rodolfo Anguiano, Jr., who was driving a car with an expired registration and which was registered to another individual. July 31, 2017 Hr'g Tr. 43-44 (hereinafter "2017 Hr'g Tr."), Docket Nos. 114-15.[3] During the stop, Officer Gruber became suspicious and, upon arrival of another officer, arrested Anguiano and searched the car. *Id.* at 276.

Following the arrest and search of the vehicle, Officer Gruber and two other officers drove to the Embassy Suites where Anguiano had informed them he was staying. *Id.* at 67, 128-30. Upon entering the hotel room, which had a living room area with a separate bedroom down a short hallway, *Id.* at 71, the officers encountered Baez and Zyaira Marie Gavino, a co-defendant in this case. *Id.* at 69. There was drug paraphernalia in plain view. *Id.* Gavino stated that she and Baez were visiting Anguiano and staying in his room for a few days. *Id.* at 75. Officer Gruber requested and received Gavino's consent to search the room, although the exact scope of the request and consent is unclear. *Id.*

After searching the front room, where he found four .22 caliber bullets, Officer Gruber moved to the back room of the hotel suite. *Id.* at 76-79. In the back bedroom, officers discovered a locked armoire and a cell phone propped up to face it, apparently streaming a live video feed of the room. *Id.* at 76-77. Officer Gruber found

---

[2]    The full background of the search and Baez's arrest is set forth in the Court's December 19, 2017 Order (Docket No. 160).

[3]    The hearing was conducted over two days and the transcript, while contiguously paginated, appears as two docket entries.

methamphetamine behind the front panel of the bedroom's sink cabinet. *Id.* at 79. After discovery of the drugs, a warrant was obtained to search the rest of the hotel room and a Chevy Equinox associated with the occupants of the suite. *Id.* at 80. Once the warrant arrived, the officers continued their search and discovered additional drugs and a handgun in the armoire. *Id.* at 83-84. Baez and Gavino were then arrested and taken to Bloomington police department, where they were interviewed. *Id.* at 220-21.

### B.    Indictments

Baez was originally indicted in June of 2017 on two counts relating to possession and distribution of methamphetamine. Indictment, Docket No. 28. In February 2018, the Government brought a Superseding Indictment, adding a second conspiracy count linking Baez to Barron. Superseding Indictment, Docket No. 181. The Government brought the current Superseding Indictment against Baez in April 2018, charging him with four counts: (1) conspiracy to distribute and possess with intent to distribute methamphetamine, (2) possession of a firearm in furtherance of a drug trafficking crime, (3) conspiracy to possess firearms in furtherance of a drug trafficking crime, and (4) possession with intent to distribute methamphetamine. Second Superseding Indictment, Docket No. 243.

### C.    Prior Motions

Baez previously sought to suppress the evidence obtained during the search of the hotel room. The Court, partially sustaining the Government's objection to the Report and Recommendation, determined that Baez lacked a reasonable expectation of privacy in the back bedroom, and thus the police did not violate his Fourth Amendment Rights. The Court's determination was based on the active monitoring of the room by cell phone surveillance. Dec. 19, 2017 Order 23-24, Docket No. 160.

Following appointment of new counsel, *see* Order Appointment Counsel, Docket No. 164, Baez moved the Court to reconsider its ruling on his motion to suppress, arguing that there was not sufficient probable cause for his arrest. The Court disagreed and denied his motion, concluding that facts available to the officers at the time of the arrest were sufficient to link him to the drugs found in the back bedroom.

## II.   Barron

### A.   Arrest and Apartment Search Warrant

Following an investigation involving methamphetamine trafficking in Minnesota, law enforcement officers obtained an arrest warrant for Barron. *See generally* Gov't Ex. 10 (Barron Criminal Complaint); July 11, 2018 Hr'g Tr. 61 (hereinafter "Hr'g Tr."), Docket No. 354. Officers executed the warrant on September 5, 2017, in St. Cloud, Minnesota. Gov't Ex. 11 (Application for Search Warrant 2). After establishing surveillance outside an apartment complex, officers saw Barron leave one of the buildings while carrying a small trash bag and a cooler. Hr'g Tr. 65. Barron and three others got into a white Chevrolet Impala; Barron sat in the rear passenger seat. *Id.* at 66.

Shortly after the Impala left the parking lot, officers conducted a traffic stop to arrest Barron. *Id.* at 66-67. During the subsequent search of the vehicle, officers recovered the bag and cooler that Barron had carried out of the apartment building, which were in plain view on the floor of the backseat. *Id.* at 67. The cooler contained what appeared to be two bags of methamphetamine. *Id.* at 71.

Officers obtained a rent roll from the apartment building that Barron had left and identified one of the other occupants of the vehicle as the tenant of unit #23. Gov't Ex. 11, at 3. The officers then obtained a search warrant from Stearns County District Court. Gov't Ex. 11.

4

Following arrest, Barron was taken from St. Cloud to Hennepin County. *Id.* Shortly after his arrival, DEA Task Force Officers Flanagan and Maloney, along with Hennepin County Sheriff's Department Deputy Lopez, interviewed Barron in his cellblock. *Id.* at 90-91. Deputy Lopez served as an interpreter. *Id.* After being read his *Miranda* rights in Spanish, Barron provided a statement to police. *Id.* at 93; Gov't Ex. 8.

### B.    Identifications

As part of their investigation of Barron, law enforcement officers used several confidential sources. Hr'g Tr. 78. In three instances, officers showed sources a picture of Barron, and the confidential source positively identified him each time.

In the first picture identification on October 31, 2016, CS1[4] stated that he or she knew Barron by the nickname "el Kora," and that he was involved in drug trafficking in Minnesota. *Id.* at 79. This was the first time that the officer meeting with CS1 had heard of Barron. *Id.* at 80. The officer retrieved a booking photograph of Barron and presented it to CS1, who confirmed that the picture was of Barron. *Id.*; Gov't Ex. 14.

The second picture identification took place in December 2016, after law enforcement had begun to track Barron. Officers approached CS2 after seeing the source meet with Barron in a parking lot. Hr'g Tr. 81-82. A few days after establishing contact, Officer Flanagan met with CS2 and showed the source six photographs, one of which was Barron. *Id.* at 85-86; Gov't Ex. 13. Officer Flanagan told CS2 to look at each photo and, if he or she recognized someone in the picture, to explain who it was. *Id.* CS2 positively identified Barron, referring to him as "Kora." *Id.* at 85.

---

[4]    The references to the confidential sources and cooperating defendant are consistent with those used at the July 11, 2018 motion hearing.

The final photographic identification occurred after Barron's arrest, in April 2018. *Id.* at 86. CD3 was a cooperating defendant who met with Officer Flanagan as part of a proffer. *Id.* Prior to the proffer meeting, Officer Flanagan prepared a photo book, including many individual suspected to be involved, either directly or tangentially, with methamphetamine trafficking. *Id.*; Gov't Ex. 9. Officer Flanagan told CD3 to look through the book and, if he or she knew anybody, to explain to him who that person was. Hr'g Tr. 88-89. CD3 positively identified Barron. *Id.* at 89.

### C.    Indictments

The Government initially indicted Barron in a different case on one count of conspiracy to distribute methamphetamine and two counts of distribution of methamphetamine. Superseding Indictment, *United States v. Barron*, No.17-cr-165 (D. Minn. Sept. 27, 2017), Docket No. 58. Barron engaged in plea negotiations but, while a change of plea hearing occurred, he ultimately chose to maintain his plea of not guilty and requested new counsel. Feb. 26, 2018 Change of Plea Hr'g Tr. 3, *United States v. Barron*, No. 17-cr-165 (D. Minn. March 27, 2018), Docket No. 200.

Following the attempted change of plea hearing and the appointment of new counsel, the Government dismissed Barron from the prior Indictment and included him in the Second Superseding Indictment in this case.

## CONCLUSIONS OF LAW

### I.    <u>Motions to Dismiss</u>

Defendants have moved to dismiss the Indictments against them based on defects in instituting the prosecution.

A.    **Vindictive Prosecution (Baez Docket No. 293 and Barron Docket No. 327)**

Both Baez and Barron argue that the Government has engaged in vindictive prosecution by increasing the charges against them, and that the sequence of charges being added after they each rejected plea deals creates a presumption of vindictiveness. For this reason, they argue, all charges must be dismissed. But such a presumption is too attenuated, and dismissal not warranted.

For a defendant to show prosecutorial vindictiveness, and thus a violation of his due process rights, he "must show that the superseding indictment containing the additional charges was sought in retaliation for exercising constitutional or statutory rights." *United States v. Punelli*, 892 F.2d 1364, 1371 (8th Cir. 1990). The defendant bears the burden to show vindictiveness, and his "evidentiary burden is a heavy one." *United States v. Leathers*, 354 F.3d 955, 961 (8th Cir. 2004). Absent objective evidence of a prosecutor's vindictive motive, "a defendant may, in *rare* instances, rely upon a presumption of vindictiveness." *United States v. Chappell*, 779 F.3d 872, 879 (8th Cir. 2015) (quoting *United States v. Kriens*, 270 F.3d 597, 602 (8th Cir. 2001)). However, a defendant relying upon such a presumption must demonstrate more than "a mere opportunity for vindictiveness." *Id.* at 881 (citing *United States v. Goodwin*, 457 U.S. 368, 384 (1982)).

In the instant case, Defendants fail to demonstrate vindictiveness. While their postures are slightly different, both Baez and Barron rely upon the timing of the Indictments: each was initially charged with lesser or fewer crimes, each rejected a plea deal, new Indictments followed. However, "timing alone" does not "give[] rise to a reasonable likelihood of vindictiveness." *Id.* at 881. The Supreme Court has held that

"confronting a defendant with the risk of more severe punishment" for rejecting a plea bargain is not inherently vindictive. *See Bordenkircher v. Hayes*, 434 U.S. 668-69 (1978) ("To hold that the prosecutor's desire to induce a guilty plea is an 'unjustifiable standard,' which . . . may play no part in his charging decision, would contradict the very premises that underlie the concept of plea bargaining itself.").

Further, the Government maintains that the subsequent Indictments were based upon new evidence gathered through continuing investigation, which is consistent with the record. *See* Gov't's Omnibus Resp. to Def.'s Pre-Trial Mots. 10, Docket No. 333. "There can be no prosecutorial vindictiveness if the prosecutor revised the charge because of newly discovered evidence or some objective reason other than to punish the defendant for exercising his legal rights." *United Sates v. Campbell*, 410 F.3d 456, 462 (8th Cir. 2005). Neither Baez nor Barron offer any evidence that casts doubt upon the Government's explanation. Without anything more to suggest the Government acted out of an improper motive, both motions must be denied.

**B.   Selective Prosecution (Baez Docket No. 294)**

Baez also argues that the Indictment against him must be dismissed as he is the target of selective prosecution. Prosecutorial discretion is "subject to constitutional constraints . . . imposed by the equal protection component of the Due Process Clause of the Fifth Amendment" and such discretion may not be based upon "race, religion, or other arbitrary classifications." *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (internal quotations omitted). In the Eighth Circuit, a defendant alleging selective prosecution must satisfy a two-prong test by showing "that (1) people similarly situated to [the defendant] were not prosecuted; and (2) the decision to prosecute was motivated by a discriminatory purpose." *United States v. Peterson*, 652 F.3d 979, 981 (8th Cir. 2011).

In race-based selective prosecution claims, the defendant "must show that similarly situated individuals of a different race were not prosecuted." *Armstrong*, 517 U.S., at 465.

The record does not support a conclusion of selective prosecution. Baez's assertion is based upon the racial disparities that potentially exist because of the use of confidential informants. He provides no data or other evidence to show that similarly situated individuals of other races are not prosecuted for the crimes with which he has been charged. *Id.*; *see also United States v. Ojala*, 544 F.2d 940, 943 (8th Cir. 1976) (concluding that defendant demonstrated discriminatory effect through statistical evidence and a showing that his prosecution was not through the routine processes). Even if he had done so, Baez offers nothing to show any such discrimination was the outcome intended by the Government.

Baez does cite to two authorities outside this circuit—one a district court order and the other a partial dissent in an appellate opinion—that express concern about the potential racial disparities implicit in the use of confidential informants during "stash house" stings. Whatever legitimate concerns these opinions raise, they do not support Baez's legal conclusion. In *United States v. Brown*, the District Court for the Northern District of Illinois, after evaluating the data and hearing expert testimony, ultimately concluded that the defendant "substantially fail[ed] to meet the exacting standard set by the current applicable law" to prove that the stash house setup had either a discriminatory effect or intent. 299 F. Supp. 3d 976, 1013 (N.D. Ill. 2018) (applying the same "discriminatory effect/intent" analysis as used in the Eighth Circuit). In a partial dissent in *United States v. Washington*, Judge McKee of the Third Circuit similarly suggests discomfort with the racial and economic disparities of stings set up by confidential informants, but does so in the context of sentencing manipulation, not under the

framework of a selective prosecution claim. 869 F.3d 193, 223-26 (3d Cir. 2017) (McKee, J., concurring in part and dissenting in part). Further, the facts here are not the same as those in the cases Baez offers as support: the confidential informants were not used to lure him into a situation where he was in possession of more drugs than he otherwise would have been. Baez asks this Court to take a leap that is not supported by either precedent or the specific facts of this case and one which thus cannot support his motion to dismiss.

### C.    Lack of Probable Cause and Use of Immunized Testimony (Baez Docket No. 311)

In his final motion to dismiss, Baez argues that the grand jury lacked probable cause to indict him because the only evidence linking him to a conspiracy is a proffer statement. To the extent that Baez is challenging the adequacy or sufficiency of the evidence before the grand jury, such challenges have long been held to be without merit. *United States v. Nelson*, 165 F.3d 1180, 1182 (8th Cir. 1999) (citing *Costello v. United States*, 350 U.S. 359, 363-64 (1956)). To the extent that he challenges the Indictment based upon a lack of specificity, the motion is denied for reasons articulated in this Court's order denying his motion for a bill of particulars: the Indictment states all the necessary elements of the charges and provides Baez with fair notice. *See United States v. Hughson*, 488 F. Supp. 2d 835, 840 (D. Minn. 2007).

Finally, to the extent that Baez suggests that the Government improperly relied upon immunized testimony in securing the Indictment, *see Kastigar v. United States*, 406 U.S. 441 (1972), the record does not support the conclusion. Baez claims that testimony provided under the terms of a proffer agreement may have been presented to the Grand Jury but fails to cite to any such proffer in the record. A proffer agreement,

10

which promises limited immunity on specific terms, does not necessarily raise the same Fifth Amendment compelled testimony concerns that the blanket statutory immunity at issue in *Kastigar* does. *United States v. Al-Esawi*, 560 F.3d 888, 892-93 (8th Cir. 2009); *see also United States v. Brown*, 801 F.2d 352, 354-55 (8th Cir. 1986) (holding that proffer agreements are contractual in nature and the Government is not bound if the defendant breaches first). Without examining the terms of any alleged proffer, it is impossible to conclude that immunized testimony had impermissibly been used.

## II.  Motions to Sever

The Court now turns to the pending motions to sever. A defendant may seek relief from the joinder of offenses or defendants for trial if such joinder "appears to prejudice [the] defendant." Fed. R. Crim P. 8(a). "The district court may sever trials if it appears that compelling or severe prejudice will result to the defendant." *United States v. Young*, 753 F.3d 757, 777 (8th Cir. 2014). For determining whether severance is required, "[p]rejudice is some appreciable chance that defendants would not have been convicted had the separate trial they wanted been granted." *Id.*

### A.  Severance of Defendants (Baez Docket No. 296; Barron Docket No. 326)

Both Defendants filed motions to sever their cases from each other, alleging that prejudice would result from a joint trial. Barron argues that a joint trial would prejudice him because he is not a part of the conspiracy to possess firearms in furtherance of a drug trafficking crime, as his co-defendant allegedly is. Conversely, Baez suggests that he will suffer prejudice because the co-defendants will likely have to argue antagonistic defenses and because the physical evidence against Barron is far more substantial, which the jury will not be able to compartmentalize. Neither argument avails.

Generally, defendants may be joined in the same indictment—and trial—"if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses . . . . All defendants need not be charged in each count." Fed. R. Crim. P. 8(b). Alleged co-conspirators should generally be tried together, as "it gives the jury the best perspective on all of the evidence." *Young*, 753 F.3d, at 778; *see also Zafiro v. United States*, 506 U.S. 534, 537 (1993).

Defendants' joint trial is appropriate in the present case because both are charged with conspiring to distribute methamphetamine, while additional, specific, individual counts arise from that conspiracy. *See United States v. Houston*, 892 F.2d 696, 703 (8th Cir. 1989); *United States v. Quiroz*, 57 F. Supp. 2d 805, 824 (D. Minn. 1999) (finding joinder proper when "Count I relate[d] to a conspiracy involving Defendant and his Co-Defendant"). While Baez and Barron speculate about prejudice, such speculation is not sufficient. *Quiroz*, 57 F. Supp. 2d, at 825. "Severance is not required simply because evidence may be admissible as to one defendant but not as to another." *United States v. Helmel*, 769 F.2d 1306, 1322 (8th Cir. 1985); *Young*, 753 F.3d, at 779 (noting that limiting instructions can cure most evidentiary concerns in joint trials of co-defendants). Nor has Baez demonstrated that he and Barron will necessarily present defenses so antagonistic that the "jury will unjustifiably infer that *this conflict alone demonstrates that both are guilty*." *United States v. Payton*, 636 F.3d 1027, 1037 (8th Cir. 2011) (emphasis original). Without a showing of actual prejudice, granting Defendants' motions would undermine the judicial economy sought by Rule 8.

## B. Severance of Counts (Baez Docket No. 295)

Besides seeking a separate trial from his co-defendant, Baez moves to sever Count Four of the Second Superseding Indictment and have a separate trial on that count.

The Court cannot grant Baez's motion because the count was properly joined, and Baez has failed to demonstrate severe prejudice.

Where, as here, an indictment joins defendants and offenses, the court reviews joinder of offenses under Rule 8(b) of the Federal Rules of Criminal Procedure. *United States v. Mann*, 701 F.3d 274, 289 (8th Cir. 2012). Thus, the question is whether the joint counts were part of the "same series of acts or transactions," meaning "acts or transactions that are pursuant to a common plan or a common scheme." *Id.* Even if the counts are properly joined, a court may sever if trying the counts together would prejudice the defendant. *United States v. McCarther*, 596 F.3d 438, at 442 (8th Cir. 2010). However, "there is a strong presumption against severing properly joined counts." *Id.* (internal citation omitted).

Count Four is properly joined and Baez has not demonstrated a prejudice sufficient to overcome the presumption in favor of joinder. Count Four, like Counts Two and Three, appear to be encompassed by the conspiracy alleged in Count One and are thus a part of a common plan or scheme. *See McCarther*, 596 F.3d, at 442 (holding that a charge for "using, possessing and discharging a firearm in furtherance of a drug trafficking offense" was "necessarily connected to the drug trafficking conspiracy allegation"). To the extent that Count Four occurred during the time that Count One alleges a conspiracy existed, Count Four is an overt act of the conspiracy, so it is unclear how Baez would face prejudice by facing radically different charges or how the evidence of Count Four would be inadmissible in a trial involving conspiracy to distribute methamphetamine. Finally, while Baez suggests he wishes to testify on all the counts except Count Four, he has not demonstrated why such a choice would be prejudicial. *See Id.* at 443 (stating that the defendant wishing to sever counts so that he may testify to some, but not all, of the

charges "must make a persuasive and detailed showing regarding the testimony he would give on the one count he wishes severed and the reason he cannot testify on the other counts"). There is no adequate basis for the Court to grant Baez's motion to sever.

### III.    Motions to Suppress

Defendants each seek to suppress evidence and statements which they contend were illegally obtained by the Government, and thus are inadmissible against them.

### A.    Government's Motion to Dismiss Suppression Motions (Baez Docket No. 334)

Before reaching the merits of the various suppression motions, the Court must briefly address the Government's motion to dismiss two of Baez's suppression motions (Docket Nos. 291-92). The Government contends that Baez, through prior counsel, has already raised the suppression issue and lost, and that his new motions are thus barred by the doctrines of res judicata and collateral estoppel.

In short, res judicata and collateral estoppel do not apply to bar Baez's motions. While applicable in criminal cases, both res judicata and collateral estoppel—claim preclusion and issue preclusion—require a final judgment on the merits. *Murphy v. Jones*, 877 F.2d 682, 684 (8th Cir. 1989); *Swapshire v. Baer*, 865 F.2d 948, 951 (8th Cir. 1989). The final judgment requirement is clear: "a mere interlocutory decree does not afford a basis for the plea [of res judicata]." *McDonnell v. United States*, 455 F.2d 91, 96 (8th Cir. 1972) (holding that a prior ruling on a motion to suppress evidence was not a final judgment to be given preclusive effect); *see also United States v. Turner*, 130 F.3d 815, 819-20 (8th Cir. 1997) ("There was no 'verdict' in this case . . . . By its own definition, then, the doctrine of *res judicata* is inapplicable."). Because the prior order denying Baez's

motions is not a final judgment or verdict, it has no preclusive effects in Baez's present motions.

**B.    Hotel Search (Baez Docket No. 292)**

Baez rekindles his motion to suppress evidence seized during the search of the Embassy Suites hotel room before police obtained a warrant. In support of his request, Baez suggests the Court has created an irreconcilable contradiction by first concluding that he had no reasonable expectation of privacy in the back room of the hotel suite, *see* Dec. 12, 2017 Order 24, Docket No. 160, but later finding that the police had probable cause to arrest him, based in part on items found in the same back room. *See* March 30, 2018 Order 9-12, Docket No. 235.

There is no contradiction in the Court's rulings, as each involves a different standard of analysis. To assert that an unreasonable search has occurred in violation of the Fourth Amendment, a defendant must demonstrate as a threshold matter that he had a "legitimate expectation of privacy in the premises searched." *Byrd v. United States*, 138 S.Ct. 1518, 1526 (2018). For law enforcement to arrest an individual, they must have probable cause, which "exists when the totality of the circumstances at the time of the arrest are sufficient to lead a reasonable person to believe that the defendant had committed or is committing an offense." *Greeman v. Jessen*, 787 F.3d 882, 888 (8th Cir. 2015).

That Baez had access, or even some degree of control, over the back bedroom is a matter separate from whether he had a reasonable expectation of privacy over that same space. *Cf. Minnesota v. Carter*, 525 U.S. 83, 88-89 (1998) (discussing when one may have a reasonable expectation of privacy in another's home). In deciding the suppression question, the Court determined that Baez's Fourth Amendment rights were

not violated because he lacked a "legitimate expectation of privacy in the back bedroom, which was being actively monitored through cell phone surveillance." Dec. 19, 2017 Order 24. The Court did not conclude, contrary to Baez's assertion, that Baez did not have access to the room or that the video surveillance gave the surveilling party "sole control." The Court simply recognized that "legitimate presence on the premises of the place searched, standing alone, is not enough to accord [the] reasonable expectation of privacy" necessary to invoke the Fourth Amendment's prohibition against unreasonable searches and seizures. *Byrd*, 138 S.Ct., at 1527. By contrast, in its subsequent determination that there was probable cause to arrest Baez, the Court found that law enforcement could reasonably link him to the methamphetamine found in the back bedroom based upon the admissible evidence. *See* March 30, 2018 Order 11. Further, the Court in effect addressed Baez's argument in a footnote, stating that, even if the evidence from the back bedroom had been suppressed, there were sufficient facts to provide probable cause for arrest. *Id.* at 11, n. 5.

To accept Baez's reasoning that the use of evidence against a defendant necessarily creates a Fourth Amendment right to challenge the underlying search would obliviate decades of Supreme Court precedent. *See, e.g.*, *Rakas v. Illinois*, 439 U.S. 128, 148-49 (1978); *Carter*, 525 U.S., at 88 ("But the extent to which the Fourth Amendment protects people may depend upon where those people are."). That is something this Court cannot do.

## C.     St. Cloud Apartment Search Warrant (Barron Docket No. 316)

Barron seeks the suppression of all evidence derived from the search of the apartment in St. Cloud, Minnesota, arguing that there was an insufficient nexus between

16

his arrest and the search of the apartment to support probable cause.[5] A search warrant is supported by probable cause if, "based on the totality of the circumstances set forth in the application and affidavits, 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Johnson*, 528 F.3d 575, 579 (8th Cir. 2008) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

The affidavit submitted to obtain the search warrant provided the issuing court sufficient probable cause. It stated that Barron was the subject of an ongoing investigation and that officers had previously seen Barron at the apartment complex. Gov't Ex. 11, at 2. It described how officers watched Barron exit the apartment complex carrying a cooler and trash bag, as well as his subsequent arrest and the positive field test for methamphetamine found in the cooler. *Id.* at 2-3. Officers established that one of the occupants of the Impala that was arrested with Barron was a tenant in the apartment building and identified which unit was his. *Id.* at 3. Given the totality of the circumstances, it was reasonable to trace Barron and the cooler back to that specific apartment unit, even if the officers had not seen which unit Barron had left. While the officers may have lacked actual knowledge, "absolute certainty was not necessary," *United States v. Tellez*, 217 F.3d 547, 549 (8th Cir. 2000), and their reasonable inferences were sufficient to satisfy probable cause.

---

[5]    Barron's motion broadly challenges all the warrants involving him. *See* Mot. to Suppress Evidence, Docket No. 316. Based upon counsel's representation during the hearing on the motion and in supplemental briefing, it is clear that the only warrant Barron is truly challenging for lack of probable cause is the one for the search of the St. Cloud apartment. *See* Hr'g Tr. at 113, Docket No. 354; Def.'s Mem. Supp. of Mot. to Suppress, Docket No. 346.

### D.    Barron's Post-Arrest Statement (Barron Docket No. 317)

Barron also argues that the statement he made to police following his arrest must be suppressed as being involuntary. Although the Fifth Amendment protects a defendant against self-incrimination, he may waive that right if the waiver is knowing, intelligent, and voluntary. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). The voluntariness of a statement is judged by the totality of the circumstances, although the Government bears the burden of persuasion. *United States v. LeBrun*, 363 F.3d 715, 724 (8th Cir. 2004). "A statement is involuntary when it was extracted by threats, violence, or express or implied promises sufficient to overbear the defendant's will and critically impair his capacity for self-determination." *Simmons v. Bowersox*, 235 F.3d 1124, 1132 (8th Cir. 2001).

The Government has proven by a preponderance of the evidence that Barron's post-arrest statement was voluntary. Officers interrogated Barron in his cellblock at the United States Marshal's Service in Minneapolis and no weapons were drawn or otherwise displayed. Hr'g Tr. 90-91. Officers provided Barron with his *Miranda* rights in Spanish. *Id.* at 93. There was no indication that Barron was under the influence of any intoxicating substances or was otherwise distressed. *Id.* at 96. Barron waived his rights and, during the subsequent statement, never re-invoked them. *Id.* at 93-94; Gov't Ex. 8. Nothing else in the recording of the interrogation suggests the use of coercive tactics or promises that would render Barron's statement involuntary. *See generally* Gov't Ex. 8. Barron's motion is denied.

### E.    Eyewitness Identification of Barron (Barron Docket No. 318)

Finally, Barron moves for the suppression of "any eyewitness identification of him," arguing that any such identification violated his Sixth Amendment right to counsel or was

18

otherwise a violation of his due process rights by being unduly suggestive. The motion is vague and, to the extent that specific grounds can be discerned, it fails.

Based upon the record, there are three identifications of Barron: the October/November 2016 booking photo identification by CS1, the December 2016 six photo identification by CS2, and the April photo book identification by CD3. Because each is a photographic identification, Barron's suggestion that his Sixth Amendment rights were violated is without merit. *See United States v. Ash*, 413 U.S. 300, 317-319 (1973) (holding that, because the defendant is not present during photographic identifications, the presence of counsel is not necessary to guarantee that the defendant is not "misled by his lack of familiarity with the law or overpowered by his professional adversary").

Barron's assertion that any of the photographic identifications was impermissibly suggestive is more complicated, but ultimately cannot succeed. Pre-trial photographic identifications may not be admitted if the "procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384 (1968). Courts in this circuit first examine whether the photographic presentation was impermissibly suggestive and then determine whether, based upon a totality of the circumstances, suggestive presentation violated due process by undermining the reliability and creating the substantial likelihood of irreparable misidentification. *United States v. Martin*, 391 F.3d 949, 952 (8th Cir. 2004).

Nothing in the record suggests that the identifications by CS2 and CD3 were impermissibly suggestive. Police showed CS2 six photographs, each of different individuals, and asked CS2 to say if he or she recognized anyone in the photographs, but never suggested that he or she should recognize anybody. Hr'g Tr. 85-86. Similarly, CD3 was shown approximately 90 photographs of various individuals and was told that he or

she may not know anyone in it, but that CD3 should inform the police if he or she did recognize anybody. Hr'g Tr. 86, 88-89; Gov't Ex. 9. Such procedures are well within the limits set by the Eighth Circuit, which has held that open ended questions about a photo array permissible. *See United States v. Omar*, 786 F.3d 1104, 1108-09 (8th Cir. 2015); *United States v. Daily*, 488 F.3d 796, 803-04 (8th Cir. 2007).

As to the identification by CS1, there is no likelihood of irreparable misidentification, even though single photograph identifications have generally been held to be impermissibly suggestive. *See United States v. Patterson*, 20 F.3d 801, 806 (8th Cir. 1994). In *United States v. Dobbs*, the Eighth Circuit distinguished single picture identifications by an eyewitness to a crime who is otherwise unfamiliar with the defendant with a witness who is already well acquainted with him. 449 F.3d 904, 909-10 (8th Cir. 2006). In such instances, the concern of undue prejudice is absent. *Id.* The record here suggests that CS1 had an ongoing relationship with Barron, whom he knew as el Kora. Hr'g Tr. 79-80. CS1's relationship and familiarity with Barron greatly diminish any concern of irreparable misidentification under the circumstances and cannot be grounds for suppressing the identification.[6]

---

[6]    Courts in this District appear to disagree as to whether the holding in *Dobbs* is applied at the "impermissibly suggestive" or "irreparable misidentification" step of the analysis. *Compare United States v. Unpraidt*, Crim. No. 17-107(4) (DWF/TNL), 2018 WL 337177, at *1 (D. Minn. July 11, 2018) (finding no "undue suggestiveness") *with United States v. Gaye*, Crim. No. 14-344 (JRT/FLN), 2015 WL 8785745, at *13 (D. Minn. June 11, 2015), *adopted as modified by* 2015 WL 8751477 (D. Minn. Dec. 14, 2015) (finding the identification suggestive, but not a violation of due process). The ultimate result is the same.

# RECOMMENDATION

For the reasons set forth above, IT IS RECOMMENDED THAT:

1.    Defendant Kelvin Baez's Motion to Suppress Evidence [Docket No. 292] be DENIED.

2.    Defendant Kelvin Baez's Motion to Dismiss – Vindictive Prosecution [Docket No. 293] be DENIED.

3.    Defendant Kelvin Baez's Motion to Dismiss – Selective Prosecution [Docket No. 294] be DENIED.

4.    Defendant Kelvin Baez's Motion for Severance of Counts 1-3 From Count 4 of the Second Superseding Indictment [Docket No. 295] be DENIED.

5.    Defendant Kelvin Baez's Motion for Severance of Defendants [Docket No. 296] be DENIED.

6.    Defendant Kelvin Baez's Motion to Dismiss the Second Superseding Indictment for Lack of Probable Cause and Use of Immunized Testimony [Docket No. 311] be DENIED.

7.    Defendant Heriberto Banuelos Barron's Motion to Suppress Evidence Obtained as a Result of Search and Seizure [Docket No 316] be DENIED.

8.    Defendant Heriberto Banuelos Barron's Motion to Suppress Any Statements Made by Defendant [Docket No. 317] be DENIED.

9.    Defendant Heriberto Banuelos Barron's Motion to Suppress Eyewitness Identification [Docket No. 318] be DENIED.

10.    Defendant Barron's Motion to Suppress Evidence Obtained by Electronic Surveillance and Wiretapping [Docket No. 319] be DENIED as moot based upon the

representations of the Government in its written response to Defendant's pretrial motion and at the hearing.

11.    Defendant Heriberto Banuelos Barron's Motion for Severance [Docket No. 326] be DENIED.

12.    Defendant Heriberto Banuelos Barron's Motion to Dismiss-Vindictive Prosecution [Docket No. 327] be DENIED.

13.    The Government's Motion to Dismiss Defendant Baez's Pretrial Motions to Suppress Evidence [Docket No. 334] be DENIED.


Dated:        August 30, 2018

                                s/ David T. Schultz
                                DAVID T. SCHULTZ
                                United States Magistrate Judge


## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set for in LR 72.2(c).