UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,

        Plaintiff,

v.

        MEMORANDUM OPINION
        AND ORDER
        Criminal No. 17-135(2) ADM/DTS
        Civil No. 22-1548 ADM

Kelvin Baez,

        Defendant.

_____

David P. Steinkamp, Assistant United States Attorney, Minneapolis, MN, on behalf of Plaintiff.

Carlos Fleites, Esq., Miami Beach, FL, on behalf of Defendant.
_____

## I. INTRODUCTION

This matter is before the undersigned United States District Judge for a ruling on Defendant Kelvin Baez's ("Baez") Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence [Docket No. 629] ("2255 Motion").[1] For the reasons stated below, the 2255 Motion is denied.

## II. BACKGROUND

On January 16, 2019, after an eight-day trial, a jury found Baez guilty of conspiracy to distribute and possess with intent to distribute methamphetamine, conspiracy to possess firearms in furtherance of a drug trafficking crime, and aiding and abetting possession with intent to distribute methamphetamine. Verdict [Docket No. 513].

---

[1] All citations are to the criminal case docket.

At trial, the Government presented overwhelming evidence of Baez's guilt. Two Bloomington police officers testified that they arrested Baez in an Embassy Suites hotel room after searching the room and finding two bags of methamphetamine inside a bathroom cabinet; a handgun, cell phones, pipe, digital scale, and multiple pounds of methamphetamine inside a locked armoire; and a cell phone that was aimed at the armoire and appeared to be monitoring it. The officers also found keys to a Chevy Equinox and located the vehicle in the hotel parking lot. The officers searched the vehicle and found methamphetamine, a scale, a firearm, ammunition, and a safe containing documents with Baez's name on them.

The trial evidence also included a recorded interview of Baez by law enforcement officers after his arrest. In the interview, Baez admitted to his involvement in the drug trafficking organization. Additionally, a co-conspirator testified to Baez's involvement in the drug trafficking conspiracy. The Government also introduced dozens of text messages from Baez's cell phone showing Baez's ongoing management role in the drug organization. Numerous cash deposits and wire transfers by Baez to the organization's drug source in Mexico during March, April, and May of 2017 were also introduced at trial.

During the trial, Baez's theory of defense was that he did not act with the intent to distribute methamphetamine or to join the drug trafficking conspiracies because he believed in good faith that he was assisting a government informant named Pablo Gomez-Segura ("Gomez-Segura") in a drug trafficking investigation. Gomez-Segura worked as an informant with the DEA in Minnesota from March 2016 until December 31, 2016, when he was deactivated for conspiring to distribute approximately 11 pounds of cocaine. Trial Stip. [Docket No. 633, Attach. 1] ¶¶ 1, 3-6. Gomez-Segura was arrested on February 13, 2017, and was in custody

during much of the time period of the trafficking in the Baez case. Trial Tr. Vol. IV [Docket No. 550] at 576.

On August 20, 2019, the Court sentenced Baez to a term of 168 months on each of the three counts, to run concurrently. Min. Entry [Docket No. 578]; Sentencing J. [Docket No. 579] at 2. Baez appealed his conviction and sentence and the Eighth Circuit affirmed. United States v. Baez, 983 F.3d 1029 (8th Cir. 2020), cert. denied, 141 S. Ct. 2744 (2021).

On June 10, 2022, Baez timely filed this 2255 Motion seeking to vacate his conviction and sentence. Baez claims ineffective assistance of counsel on eight grounds:

1. Failure to pursue an entrapment defense;

2. Failure to pursue a public authority defense;

3. Pursuing a legally invalid defense;

4. Failure to prepare Baez to testify;

5. Failure to object to improper testimony regarding Baez's state of mind;

6. Failure to call a Gomez-Segura as a defense witness at trial;

7. Failure to object to expert testimony regarding drug trafficking; and

8. Failure to object to questions and statements made by the prosecution.

### III. DISCUSSION

**A. Legal Standards**

**1. 28 U.S.C. § 2255**

Persons in federal custody are provided a limited opportunity to collaterally attack the constitutionality, jurisdictional basis, or legality of their sentence under 28 U.S.C. § 2255. See United States v. Addonizio, 442 U.S. 178, 185 (1979). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could

3

not have been raised on direct appeal, and if uncorrected, would result in a complete miscarriage of justice." Walking Eagle v. United States, 742 F.3d 1079, 1081-82 (8th Cir. 2014) (quoting United States v. Apfel, 97 F.3d 1074, 1076 (8th Cir. 1996)).

### 2. Ineffective Assistance of Counsel

"To establish ineffective assistance of counsel within the context of section 2255 . . . a movant faces a heavy burden." Apfel, 97 F.3d at 1076. A defendant must show that "(1) his attorney's performance failed to conform to the degree of skill, care, and diligence of a reasonably competent attorney; and (2) he was prejudiced by the attorney's poor performance." Pierce v. United States, 686 F.3d 529, 531 (8th Cir. 2012) (citing Strickland v. Washington, 466 U.S. 668 (1984)).

To satisfy the deficient performance prong of this two-part test, a defendant must show that counsel's errors were not the result of a "reasonable professional judgment." Strickland, 466 U.S. at 690. In doing so, the defendant runs up against a strong presumption "that counsel ... rendered adequate assistance." Id. To meet the prejudice prong, the defendant must prove, with "a probability sufficient to undermine confidence in the outcome," that "but for the counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

## B. Baez's Claims

### 1. Choice of Defense Pursued at Trial (Claims 1 through 3)

In Claims 1 and 2, Baez argues that trial counsel was ineffective for failing to pursue a public authority or entrapment defense. Baez contends that he would have been acquitted if trial counsel had pursued one of these defenses. In Claim 3, Baez argues that counsel was deficient for pursuing an innocent intent defense because it was a legally invalid defense.

The Eighth Circuit "ha[s] recognized defenses based on perceived government authority, including public authority, entrapment by estoppel, and innocent intent." United States v. Juhic, 954 F.3d 1084, 1088 (8th Cir. 2020) (citing United States v. Xiong, 914 F.3d 1154, 1159–60 (8th Cir. 2019)). "Public authority" is "an affirmative defense where the defendant seeks exoneration based on the fact that he reasonably relied on the authority of a government official to engage him in covert activity." Xiong, 914 F.3d at 1159 (quoting United States v. Achter, 52 F.3d 753, 755 (8th Cir. 1995)). The Eighth Circuit has not yet addressed whether the public authority defense requires a showing of actual, as opposed to apparent, authority. Id. at 1160.

"Entrapment by estoppel applies when an official assures a defendant that certain conduct is legal, and the defendant reasonably relies on that advice and continues or initiates the conduct." Id. (internal quotations omitted). "Both public authority and entrapment by estoppel require a defendant to establish that he reasonably relied on the representations of a government official." Achter, 52 F.3d at 755.

Baez argues that the public authority defense applies to him because Gomez-Segura was a government official due to his status as a government informant, and Baez was acting under Gomez-Segura's apparent authority. Baez also contends that the entrapment by estoppel defense applies to him because he was induced by Gomez-Segura to commit the offenses.

Assuming without deciding that Gomez-Segura's status as an informant caused him to be a government official for the purposes of the public authority and entrapment defenses, the evidence shows that Gomez-Segura was terminated as an informant in December 2016 and was jailed on February 13, 2017 for distributing methamphetamine from a home in north Minneapolis where he and Baez lived. Baez continued dealing large quantities of methamphetamine for months after Gomez-Segura was in custody and terminated as a government agent. Because

5

there is no evidence from which a reasonable jury could find that Baez was entrapped or induced by a government agent after the purported agent had been deactivated and was in custody, the public authority and entrapment defenses were not available to Baez. Trial counsel was not ineffective for declining to pursue those defenses.

Baez also argues that his trial counsel was ineffective for pursuing the innocent intent defense, which Baez contends was legally invalid. The Eighth Circuit has repeatedly recognized innocent intent as one of three "defenses based on perceived public authority." See Juhic, 954 F.3d at 108; Xiong, 914 F.3d at 1159. Although the defense did not succeed, trial counsel's strategy in pursuing it was reasonable. See Hayes v. Lockhart, 766 F.2d 1247, 1251 (8th Cir. 1985) ("[A]n ineffective assistance of counsel claim cannot be based on a decision relating to a reasoned choice of trial strategy, even when proved improvident.").

Even if Baez could overcome the strong presumption that counsel's assistance was adequate, he cannot show that he was prejudiced by counsel's choice of trial strategy. Given the overwhelming evidence against Baez at trial---including a taped confession, the testimony of a co-conspirator, and numerous inculpatory text messages---the jury would have found Baez guilty in the face of any of these theories.

### 2. Preparing Baez for his Trial Testimony (Claim 4)

Baez next argues that trial counsel did not adequately explain the innocent intent theory of defense and did not properly prepare him to testify. Baez argues that as a result he testified in a confused manner by denying that he engaged in the conduct at issue, rather than admitting to the conduct but denying that he had the requisite intent.

6

Baez's trial counsel is a very experienced defense attorney and former Assistant United States Attorney. From the Court's perspective, trial counsel was well prepared during the trial and maintained good communication with Baez when in the courtroom.

Trial counsel has submitted a Declaration stating that Baez was involved in all aspects of his defense and that Baez's trial team met and communicated with him numerous times to prepare him for his direct and cross examinations. Zayed Decl. [Docket No. 633]. Baez replies that the Declaration creates a factual question to be resolved at an evidentiary hearing.

Baez's claim that he did not understand the theory of defense and was not prepared to testify is undermined by the record. Baez was present in court when his trial counsel explained the theory of defense to the Court during the pretrial conference. Trial counsel stated: "Nobody's really going to contest the acts or what happened or things of that nature. It boils down to innocent intent or a good-faith defense, and basically the defense there is based on somebody who was an informant for the DEA, a gentleman by the name Pablo Gomez-Segura." Trial Tr. Vol. I [Docket No. 547] at 23. Trial counsel further explained, "Mr. Baez truly believed that Pablo Gomez-Segura was a DEA informant and Mr. Baez came up to help him, the idea behind it being very simple, Your Honor, that if we provide the DEA enough information and enough drugs, they will pay us money for that." Id. at 24. Trial counsel then reiterated that "Mr. Baez asserts that he had a good-faith belief and acted with innocent intent at all relevant times charged in the indictment because he honestly believed that he was assisting law enforcement in its investigation of drug trafficking and drug traffickers, and therefore he did not act with any intent to distribute methamphetamine or with any intent to join the conspiracies charged, knowing their purposes." Id. at 25.

7

Trial counsel also told the Court during the pretrial conference that Baez would be testifying at trial, and that he and Baez "conferred repeatedly on this point," and that "quite frankly, with all due candor . . . this is the only defense we have. . . . We talked about it repeatedly, the pros and cons of it." Id. at 30.

Baez was also present during opening statements, when his counsel reiterated the innocent intent defense and told the jury that when they listen to Baez's recorded interview with law enforcement and "hear that, yes, he had these drugs, and yes, I got them from up there or yes, I got it from down there, the response is he thought he was helping the Government when he was doing that." Trial Tr. Vol. II [Docket No. 548] at 140.

Given this record, Baez's unsupported assertion that the reason he denied his criminal conduct when testifying under oath was because he was confused about his defense and had not been properly prepared by counsel is not credible. The allegation does not raise an evidentiary issue about whether counsel's performance was deficient. See Engelen v. United States, 68 F.3d 238, 241 (8th Cir. 1995) (stating evidentiary hearing not required if allegations are "contradicted by the record" or "inherently incredible"). Additionally, Baez cannot show prejudice because there is no reasonable basis for concluding that the outcome of the trial would have been different had Baez admitted to his criminal conduct when he testified.

### 3. Failure to Object to Testimony (Claims 5 and 7)

Baez also claims that counsel failed to object to testimony by DEA task force detective Tom Maloney ("Detective Maloney") about statements that Baez made to law enforcement when he was interviewed after his arrest. Baez contends that Detective Maloney repeatedly and impermissibly testified as to Baez's state of mind and intent when Baez made the statements, and that counsel was ineffective for failing to object to this testimony.

8

This argument ignores that during cross examination, Baez's counsel confirmed with Detective Maloney that he had no way of knowing what Baez's state of mind was during the interview that was recorded by law enforcement:

> COUNSEL: And isn't it true that after you identified yourself as a DEA agent, that's when Mr. Baez opened up to you?
>
> WITNESS: I don't recall the exact sequence of that. I don't know.
>
> COUNSEL: That's something that we will look to the tape to determine that, right?
>
> WITNESS: Correct.
>
> COUNSEL: And you do not know what was going through Mr. Baez's head, do you, during these entire events that you testified about, do you?
>
> WITNESS: Do I know what was going through Mr. Baez's head?
>
> COUNSEL: Yes.
>
> WITNESS: No.
>
> COUNSEL: You have no way of knowing that, right?
>
> WITNESS: I wasn't in his head. I wouldn't know.

Trial Tr. Vol. VI [Docket No. 552] at 799-800. Given this testimony elicited by counsel, any error in failing to object to testimony by Detective Maloney about Baez's state of mind was not prejudicial.

Baez also argues that counsel failed to object to law enforcement testimony about "drug dealers" and "typical" modes of operation by drug traffickers. However, the law enforcement officers were testifying as drug trafficking experts, and any objection would have been futile. Additionally, Baez was not prejudiced by the testimony given the overwhelming evidence of his guilt.

### 4. Failure to Call Gomez-Segura as a Defense Witness (Claim 6)

Baez claims his trial counsel was ineffective for failing to call Gomez-Segura as a defense witness at trial. Baez contends that Gomez-Segura would have provided corroboration for Baez's assertion that Gomez-Segura told Baez that he wanted him to come to Minnesota to cooperate with narcotics investigations with him.

Trial counsel requested the U.S. Marshal to serve Gomez-Segura with a trial subpoena three days before trial. Zayed Decl. Ex. 3. Gomez-Segura, through counsel, stated that he would assert his Fifth Amendment privilege if called to testify. Zayed Decl. ¶ 9, Ex. 2. At the time, Gomez-Segura was under indictment and awaiting sentencing in another federal case. The parties reached a stipulation that was admitted into evidence, which stated that Gomez-Segura was an informant during a portion of the conspiracy, was paid for information he provided, and was terminated as an informant after violating the terms of the informant agreement by committing a new drug offense. Zayed Decl. Ex. 1. Given these circumstances, trial counsel was not ineffective for not calling Gomez-Segura as a witness. See Jackson v. United States, 956 F.3d 1001, 1007 (8th Cir. 2020) (""[W]e consistently have affirmed that a defense counsel's decision not to call a witness is a virtually unchallengeable decision of trial strategy.") (alteration in original).

Additionally, Baez cannot show he was prejudiced by counsel's decision not to call Gomez-Segura as a witness. Even if Gomez-Segura had testified that he had recruited Baez to inform on conspirators with him, the evidence overwhelmingly shows that Baez continued dealing methamphetamine long after Gomez-Segura was terminated as an informant and was in custody for his own drug trafficking.

**5.  Failure to Object to Statements by the Prosecution (Claim 8)**

Baez argues that the prosecution made several improper comments which either belittled the theory of the defense or appealed to the emotion of the jury, and that trial counsel was ineffective for not objecting to the comments.  Baez contends the prosecution improperly denigrated the theory of defense by calling it "made up," "boloney," "fantasy," and an attempt to pull "wool over the eyes" of the jury.  Trial Tr. Vol. VIII [Docket No. 554] at 1115, 1171, 1199-1200.  Baez also contends that the prosecution made emotionally inflammatory comments by referring to meth as "poison" and indicated that Baez injected it into the "community" and the "children."  Id. at 1145, 1201-02.  Baez argues that trial counsel was ineffective for failing to object to the comments, and that Baez was prejudiced as a result.

"A prosecutor's comments are improper if they are likely to inflame bias in the jury and to result in a verdict based on something other than the evidence." United States v. Crawford, 523 F.3d 858, 861 (8th Cir. 2008) (internal quotation omitted).  A prosecutor's improper remarks during closing argument can be grounds for reversal of a conviction if the comments "prejudiced the defendant's rights in obtaining a fair trial." United States v. Herbst, 668 F.3d 580, 586 (8th Cir. 2012).  In determining whether a prosecutor's conduct was prejudicial, a court considers "the cumulative effect of the improprieties, the strength of the evidence against the defendant, and whether the district court took any curative action." Id. at 586-87.

This is not the first time that Baez has complained of comments made by the prosecutor at trial.  After the jury verdict, Baez moved for a new trial, arguing that the prosecution made inflammatory comments about Baez poisoning children in Minnesota and improperly claimed that Baez lied and perjured himself on the stand.  See Mem. Supp. Mot. New Trial [Docket No. 518] at 7.  The Court found that the prosecutor's comments about Baez's credibility were not

11

improper because they focused on the evidence and reasonable inferences that could be drawn from it.  See Mem. Op. Order [Docket No. 557].  The Court also found that the prosecution's remark that Baez is "dump[ing] poison on our kids," was in direct response to defense counsel's argument that Baez never reported the drug organization's activity to the police because he was afraid the drug traffickers would harm his children in Florida.  The remark was based on evidence that Baez was integrally involved in importing almost weekly large quantities of methamphetamine into Minnesota.

The same reasoning applies to the remarks challenged here.  In arguing that Baez's defense was "made up" and "based on fantasy," the prosecution highlighted the evidence that Baez remained actively involved with the drug trafficking organization until his arrest in May 2017, even though the government informant he claimed to be assisting had been in jail since February 2017.  Trial Tr. Vol. VIII at 1172–73.  Additionally, Baez never provided law enforcement with any useful information, or disclosed to agents he was assisting their work, until significantly after he was arrested in May 2017.  The remarks about bringing hundreds of pounds of methamphetamine into the community was also based on the evidence.  Given the strength of the evidence, the prosecutor's remarks did not prejudice Baez's rights in obtaining a fair trial and do not warrant reversal of his conviction.

Even if the prosecution's statements had been improper, Baez was not prejudiced by his counsel's failure to object to them, because the outcome of the trial would have been the same had counsel objected.  As stated earlier, the volume and strength of the evidence against Baez was substantial.  Accordingly, Baez cannot demonstrate actual prejudice under the Strickland standard.

## IV. EVIDENTIARY HEARING

Baez requests an evidentiary hearing to address the issues in his 2255 Motion. An evidentiary hearing is not warranted, as the 2255 Motion and the files and record in this case conclusively show that Baez is not entitled to § 2255 relief. 28 U.S.C. § 2255(b); Noe v. United States, 601 F.3d 784, 792 (8th Cir. 2010).

## V. CERTIFICATE OF APPEALABILITY

The Court may grant a certificate of appealability only where a defendant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Tiedeman v. Benson, 122 F.3d 518, 523 (8th Cir. 1997). To make such a showing, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). The Court finds it unlikely that another court would decide the issues raised in this 2255 Motion differently, or that any of the issues raised in Baez's 2255 Motion would be debatable among reasonable jurists. Therefore, the Court declines to grant a certificate of appealability.

## VI. CONCLUSION

Based upon all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant Kelvin Baez's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence [Docket No. 629] is **DENIED.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:

Dated: October 13, 2022

s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT COURT